## C. W. OSBORNE v. STATE.

[55 South. 52.]

1. CRIMINAL LAW. *Conspirators. Evidence. Credibility of witnesses. Completion of offense. Code 1906, section 1026.*

The question of the credibility of a witness is one which belongs exclusively to the jury.

2. ACCOMPLICE. *Credibility.*

While the testimony of an accomplice should be received and weighed with great distrust and jealously by the jury, it is still the province of the jury to determine what credit to give to the testimony of an accomplice from his manner and general appearance upon the stand and all other surrounding and attending circumstances and it is the jury's privilege, if they see proper, to believe him without corroboration.

3. ADMISSION OF CONSPIRATORS. *Admissibility.*

Where a conspiracy has been established, the admissions of one or more of the conspirators are admissible to affect their associates only when made during the progress or in the prosecution of the unlawful design about which they have conspired; and hence if made after its completion, or abandonment, they are inadmissible.

4. SAME.

    Acts or declarations of conspirators are not always excluded because they were done or made after the commission of the crime. If for any reason as for escape or concealment, division of profits, or realization of benefits, the common purpose continued, declarations in furtherance thereof are admissible, although the crime which was the object of the conspiracy has been consummated.

    Where a defendant is charged together with several co-conspirators with burning a stock of goods with intent to defraud an insurance company, a plea of guilty by his co-conspirators to an indictment charging them with burning the house in which the goods were located at the time of the burning is admissible to show that the fire was of incendiary origin. But this evidence was not competent for the purpose of proving that the intent was to defraud the insurance company, nor was it competent to show that defendant had any guilty connection whatever with the other conspirators in the unlawful burning.

5. CODE 1906, SECTION 1026.

    While it is true that under Code 1906, section 1026, an accessory can be tried and punished as a principal, before or after the principal has been tried, nevertheless, where several are indicted jointly for a felony, if the evidence shows that one or more were accessories before the fact, though charged in the indictment as principals, it is absolutely necessary to prove the party guilty who actually committed the felony before proof can be secured of the guilt of the accessories before the fact, although they are charged in the indictment as principals.

6. CRIMINAL CONSPIRACY. *Evidence.*

    Before the declarations of one party can be received in evidence against another in a criminal prosecution there must be proof of a conspiracy *aliunde*. But a conspiracy can be proven like other controverted facts, by the acts of the parties or by circumstances, as well as their agreement.

APPEAL from the circuit court of Tallahatchie county. HON. N. A. TAYLOR, Judge.

    C. W. Osborne was convicted of burning a stock of goods with intent to defraud an insurance company, and appeals.

    The facts are fully stated in the opinion of the court.

*Dinkins & Caldwell,* for appellant.

The rule with reference to the admissibility of state-ments and admissions of one conspirator against his fel-lows is, that after *prima facie* proof of the existence of a conspiracy is made, that such statements or admissions may be heard which were made before the crime was complete. Such statements and admissions made after-ward are always rejected by the court. Nothing said or done by one conspirator against his fellow, not in his presence, subsequent to the execution of the common purpose, has been allowed by any of the superior courts to go to the jury. This rule is very satisfactorily stated in 12 Cyc., 435 *et seq.,* especially in par. 2, on page 439, but the courts of this state have so often, so clearly and so distinctly announced and enforced this rule that we shall confine ourselves mainly to reference to decisions of this court.

In the *Browning case,* 31 Miss. 657, a case like the one at bar, resting wholly upon circumstantial evidence, the court says:

"The offense charged, if committed at all, was unseen by all save the parties engaged in its perpetration. The whole transaction was shrouded in secrecy. The very fact of the homicide, as well as the question, who were the perpetrators of the deed, depended entirely upon in-direct or circumstantial evidence. The charge, as laid in the indictment, pre-supposes the co-operation of at least two persons in the commission of the offense. It may hence well be conceded that peculiar and urgent circum-stances existed in the cause, which authorized the appli-cation of the exception of the rule above stated, if any combination of circumstances could authorize a depart-ure from the prescribed mode. But it should ever be borne in mind, that no man can be asserted to be legally guilty of an offense unless his guilt shall have been estab-lished according to the forms and principles of law; and that in no case should a disregard of either the law it-

self or its established forms be tolerated, from any considerations of difficulty in the conviction of offenders, or from the supposed manifest guilt of the accused.''

This was said with reference to the admission of the acts and declarations of an alleged conspirator after the consummation of the conspiracy.

This reasoning in the Browning case has been followed by this court without variation ever since it was announced. It is quoted verbatim in the *Foster case,* 92 Miss. 257.

In the *Lynes case,* 36 Miss. 617, it was held error to refuse the following instructions:

No. 4. ''That the confession of one accomplice or conspirator is no evidence against another unless made before the completion of the original design; and if the jury believe that the confession of Hightower was made after the killing of Landram, they are but a relation of past occurrences, after the purpose of the conspiracy had been accomplished, and are not evidence against the defendants on trial.''

No. 6. ''The actions and declarations of one of several conspirators, the conspiracy being first established, are evidence against the others, but such acts and declarations must have been performed and made during the pendency of the criminal enterprise, and before its completion or abandonment, or else, being no part of the *res gestae,* but the mere relation of a past transaction, and cannot be received by the jury as evidence to charge the other confederates.''

In the *Garard case,* 50 Miss. 147, a like instruction was refused, which was held to be error by this court.

In the *Simmons case,* 61 Miss. 248, in which the defendant was charged with the murder of Gen. Tucker, the state was allowed to prove that Dick Shaw stated after the killing, that if he knew where the defendant was, he would write to him, and that his father would let him have a horse, if he needed one. Other conversations

of Shaw after the killing and in the absence of the defendant were given in evidence, all of which the court held to be error, though ample proof of the existence of a conspiracy was made.  See, also, *Gillam* v. *State,* 62 Miss. 547; *Wilson* v. *State,* 71 Miss. 880; *Brown* v. *State,* 72 Miss. 990; *Foster* v. *State,* 92 Miss. 257.

The instruction refused in the *Lynes case, supra,* were almost identical with instruction No. 3, refused to the appellant.  The same question presented by the instruction was also presented by objection to the testimony of the witness when delivered and by motion to exclude.

The trial court was asked in instruction No. 5, which was refused, to advise the jury that the testimony of the witness, Joe Williams, should be scrutinized with great care and caution on account of his connection with the crime charged against him, and that the jury should not only consider the said witness' connection with the crime charged, but also contradictory statements admitted to have been made by him.

Examination of the decisions of this court in the *Lynes case,* 36 Miss. 617; the *Green case,* 55 Miss. 455; the *Wilson case,* 71 Miss. 880; and the *Brown case,* 72 Miss. 990, make it clear that it is a defendant's right to have the jury so instructed.  It is not merely how a jury may regard the testimony of an accomplice, but to advise them that such testimony is viewed with suspicion and distrust by the law.  It is a legal question, a distrust or suspicion which the law entertains that the defendant is entitled to have the jury instructed upon.

It is true that the court may determine as to the language or wording of an instruction intended to express the law's distrust or suspicion of such testimony, but it cannot refuse the defendant's request to advise the jury upon so important matter.  See especially the *Green case, supra*; instruction No. 2 asked by the defendant and refused by the court was in these words:

"The court instructs the jury that in determining your verdict you will not consider any evidence of the conviction of Joe Osborne or R. E. Tannery."

The indictment and the conviction of both Joe Osborn and R. E. Tannery were introduced in evidence over appellant's objection, and his motion to exclude, afterwards made, was overruled.

The indictment was for a separate and distinct offense from that which appellant was on trial. No court, so far as we have been able to ascertain, has ever allowed the state to show on the prosecution of one conspirator, the conviction of his fellow, under the same indictment, but here, we have the record of a trial court allowing the state to introduce the record of the indictment and conviction of the appellant's co-indictees, for a separate, distinct and different offense under an indictment returned upon a different law.

The governing rule with reference to the question raised by the refusal of instruction No. 2 above, is stated in 12 Cyc. 445, as follows:

"Where two persons have been jointly indicted for the same offense, but separately tried, a judgment of conviction against one of them is not competent on the trial of the other, in as much as his conviction is no evidence either of joint action, or of the guilt of the accused. The same rule applies where two are separately indicted and tried for the same crime."

The admission of the proof of the conviction of Joe Osborne and Tennery not only violates the rule as above announced, but also the rule which prohibits the introduction of admissions of co-conspirators made after the crime is complete. The right of a defendant in a criminal case, which our laws profess so jealously to guard, do not extend so far as to justify the introduction of such records in behalf of a defendant, and how it can be conceived that such records may be introduced by the state in its prosecution, can not be explained.

In *Nix* v. *State,* 34 S. W. 764, it was held that a statement made by a son, who was a co-conspirator, made after he had walked one hundred yards from the place of the killing, that his father had killed the decedent, was held not admissible. On this question, see. *People* v. *Bearss,* 10 Cal. 68; *State* v. *Fertig,* 98 Ia. 139; *Clark* v. *Com.,* 14 Bush. (Ky.) 166; *People* v. *Mullins,* 5 N. Y. App. Div. 172; *People* v. *Kief,* 136 N. Y. 661; *State* v. *Bowker,* 26 Ore. 309; *Bell* v. *State,* 33 Tex. Cr. 163; *Harper* v. *State,* 11 Tex. App. 1.

*Carl Fox,* assistant attorney-general.

It is argued that testimony as to statements made by appellant's co-conspirators after the store had been burned was erroneously admitted. Counsel's theory is that the acts and admissions of co-conspirators done and made after the conspiracy is formed and before the object of it is consummated are admissible, and that the object of the conspiracy in this case was the burning of the stock of goods and that it was consummated when it was burned. I think counsel are in error. The object of the conspiracy was to defraud the insurance companies, and burning the store and stock of goods was merely a means to that end. When the admissions testified about were made, appellant had never settled with the insurance companies, but was trying to do so.

The correspondence between defendant and Dr. Emery extended from the latter part of March to the 27th day of April, the fire having occurred on the night of the 4th of February. The admissions of co-conspirators testified about by witnesses were made long before this correspondence. The object of the conspiracy, therefore, had not been accomplished. Moreover, the admissions objected to were made in an attempt to conceal the crime in pursuance of a purpose to enable the conspirators to escape punishment.

In 12 Cyc. 438, it is said: "1.  Acts and Declarations Before Complete Fulfilment of Purpose.—Acts or declarations of conspirators are not always excluded because they were done or made after the commission of the crime.  If for any reason as for escape or concealment the common purpose continues, declarations in furtherance thereof are admissible, although the crime which was the object of the conspiracy has been consummated.

"j.  Acts and Declarations before Dividing or Disposing of Proceeds of Crime.—Where the conspiracy has for its purpose, not only the commission of a crime, but also a division of the profits, or the realization of the benefits which are the result therefrom, as in conspiracy to commit larceny or embezzlement, the declaration by one conspirator made after the crime, but before the subsequent arrangements are completed, are competent as against his co-conspirators."

It is argued that instruction No. 5, refused defendant, ought to have been given.  It is improper to single out a witness by name and practically tell the jury that he is unworthy of belief.  Instructions Nos. 10, 4 and 3 granted the defendant, and 5 granted the state, correctly stated the principle which appellant ought to have stated to the jury by said instruction No. 5, which was refused.

I do not think that instruction No. 6 granted the state fairly bears the interpretation put upon it by counsel for appellant.  The instructions as  a whole correctly announce the law, I think.

It is argued that it is error to admit the record of the indictment, plea of guilty, and sentence of Tennery and Joe B. Osborne for burning the storehouse (not the stock of goods).  It was all the same burning.  The evidence was perfectly competent.  The theory being that these two conspired with appellant to burn the store, but that the actual setting fire to the store was done by Tennery and Joe B. Osborne, appellant being away on a hunting trip at the time, it was absolutely necessary to prove

that Tennery or Joe B. Osborne, or both, did set fire to the store. Joe Williams was discredited to some extent, and it was not incumbent upon the state to rest upon his testimony alone to prove this.

"That confession of a principal is admissible on the trial of the accessory to evidence the commission of the crime by the principal, seems clear on the present principle, supposing some evidence of the defendant's cooperation to be first furnished. But whether the judgment of conviction of the principal is receivable for the same purpose depends on the doctrine of the effect of judgments." 2 Wigmore on Evidence, sec. 1079; 12 Cyc. 195, and notes; see, also, *Givens* v. *State,* 103 Tenn. 648; *Howard* v. *State,* 109 Ga. 137; this is the rule in Mississipp; see *Keithler* v. *State,* 10 S. & M. (Miss.) 226; *Lynes* v. *State,* 36 Miss. 617.

The fact that Tennery and Joe B. Osborne plead guilty to a different indictment charging a different crime cannot affect the admissibility of their pleas of guilty and the records of their conviction. As I have stated, it was all the same fire.

Defendant did not admit that the fire was of incendiary origin, did not admit that Joe B. Osborne, Tennery or Williams had anything to do with starting the fire. The state relied upon the testimony of Joe Williams for proof of these facts and defendant made a strenuous effort to break down this testimony by impeaching Williams. The theory of the state was that defendant had procured Osborne and Tennery and Williams or one of them to set fire to the building for the purpose of defrauding the insurance companies. It was necessary therefore, in order to convict this appellant that it should be proved, first, that Joe B. Osborne, Tennery, or Williams set fire to the building; second, that it was done for the purpose of defrauding the insurance compaines. Now, their pleas of guilty and the records of their conviction were competent evidence under the rule stated in the authorities

named above, including Mississippi cases, that the fire was 'of incendiary origin and that Tennery and Joe B. Osborne were' the 'guilty parties. This evidence was not competent for the purpose of proving that the intent was to defraud the insurance companies, nor was it competent as proof that defendant had any guilty connection with Joe B. Osborne, Tenery and Williams in the unlawful enterprise. This cannot avail appellant anything, however, because only a general objection was made to the admission of this evidence.

"A general objection to the admissibility of evidence is insufficient unless the evidence objected to is palpably inadmissible for any purpose or under any circumstances." 12 Cyc. 563.

This is the rule in Mississippi. See *Lipscomb* v. *State,* 75 Miss. 559. Nowhere in the record does it appear that any specific objection was made to this evidence or that the court was asked anywhere to instruct the jury as to the purpose for which it was admitted or as to the facts which it was competent to prove.

Argued orally by *Carl Fox,* assistant attorney-general, for appellee; *Earl Brewer* and *Dinkins & Caldwell,* for appellant.

McLAIN, C.

This case was affirmed on a former day of this term (54 South. 450), without a written opinion. The attorney for C. W. Osborne, the appellant, filed a vigorous suggestion of error, based upon supposed errors in our former decision, and presents it in his brief with much skill and ability. In our former investigation, we were fully impressed with the magnitude and importance of the case. Each and every assignment of error in the record was thoroughly and deliberately considered by each member of this court. As a matter of course, we would not have affirmed it then, unless we had been satisfied that the appellant had secured a fair and impartial trial, as guaran-

teed to him by our Constitution and the laws of the land.

In this suggestion of error, we find no new questions presented; but from the importance of the case, and out of deference to the ability of counsel, coupled with the earnestness with which he presses his views, we have again thoroughly sifted, with great care, the entire record. But we find nothing therein to cause us to recede from our former opinion; but, on the contrary, this reinvestigation has strengthened us in our conviction that our former decision was right. We will now proceed to consider, in a brief way, some of the suggestions of error relied on. We will not give an abstract of the testimony, as we are satisfied that the jury was fully warranted, under the evidence, in finding the defendant guilty as charged. However, we will say that the theory of the state was that C. W. Osborne, the appellant, Joe Osborne, R. E. Tennery, and Joe Williams conspired to burn the storehouse of J. R. Crow, which appellant was occupying at the time, conducting and carrying on a mercantile business. It is alleged that his stock of goods at the time of the fire was covered and insured against damage and loss by fire in the sum of three thousand dollars. R. E. Tennery, Joe Osborne, and Joe Williams were indicted jointly, charged under section 1040 of the Code of 1906, with the burning of the storehouse, with intent to injure the said J. R. Crow. C. W. Osborne, appellant, Joe Williams, Joe Osborne, and R. E. Tennery were jointly indicted for the burning of the stock of goods in the storehouse at the time of the fire, with intent to defraud the insurance company. This indictment was drawn under section 1041, Code of 1906. Joe Osborne, Joe Williams, and R. E. Tennery, pleaded guilty to the indictment charging them with burning the storehouse. One year or more afterwards, C. W. Osborne, the appellant, was put upon trial on the indictment charging him, Joe Osborne, Joe Williams, and R. E. Tennery with burning the stock

of goods contained in the storehouse, with intent to de-
fraud the insurance company. Appellant was convicted
and sentenced to the penitentiary for seven years. The
other parties have not been tried upon this indictment;
they having pleaded guilty at the former term of the
court to the indictment charging them with the burning
of the storehouse. At the time of the fire, appellant was
some miles away, in another neighborhood, hunting with
some friends. Joe Osborne was a cousin and employee
of the defendant, working at the time in a storehouse
in the town of Charleston, Mississippi, which belonged
to the appellant. Joe Williams was a negro tenant on
appellant's farm near the Payne store, that was burned,
and R. E. Tennery had no business connection with the
appellant, so far as the record shows.

The first contention by the attorney for appellant finds
expression in the following: ''Without Joe Williams'
testimony, the state would entirely fail.'' And he insists
that Joe's contradictory statements and general deport-
ment are such, as shown by the record, as that the court
would not be justified in sustaining this verdict. It is
true that the record shows that Joe Williams had made,
prior to the trial, many statements contradictory to his
testimony delivered at the trial. Counsel earnestly in-
sists here, and no doubt pressed with great force and
eloquence to the jury, that Joe was unworthy of belief, be-
cause of these contradictory statements made on several
occasions. It is well settled that the question of credi-
bility of a witness is one which belongs exclusively to
the jury.

It is further urged that he was an accomplice. This
is true. The well-settled rule, announced by this court
time and again, is that the testimony of an accomplice
should be received and weighed with great distrust and
jealousy by the jury. But it is equally as well settled
that it is impossible to say, as a question of law, that
he should not be believed. The jury was told this by

422   Osborne *v.* State.   [Sup. Ct.

Opinion of the court.   [99 Miss.

proper instructions. It is the province of the jury to determine what credit to give to the testimony of an accomplice, from his manner and general appearance upon the stand, and all other surrounding and attending circumstances. It is for them to say solely how far he has been corroborated. Indeed, it is their privilege, if they see proper, to believe him without corroboration. Under proper instructions, the jury in this case passed upon the credibility of the witness. How much weight if any, they gave it, we do not know. They may have attached much, little, or no importance to it. This court has held that, in passing upon the worth of the testimony of an accomplice, "the question of credibility is one which belongs so exclusively to the jury that it would be a delicate point for the court to touch it." *Keithler* v. *State,* 10 Smedes & M. 194.

Counsel further contends that the declarations alleged to have been made by the co-conspirator, Joe Osborne, were not admissible against C. W. Osborne, the appellant, because made after the completion of the crime. It is a well-settled rule—indeed, it is elementary—"that, even after a conspiracy has been established, the admissions of one or more of the conspirators are admissible to affect their associates only when made during the progress or in the prosecution of the unlawful design about which they have conspired; and hence, if made after its completion or abandonment, they are inadmissible." *Lynes* v. *State,* 36 Miss. 617. Counsel does not deny this principle of law; but he, with great force and earnestness, contends that, when the stock of goods was burned, the crime for which appellant is charged was consummated and completed. Counsel is in error. What was the object of the conspiracy? The evidence makes it as clear as the noonday that it was to defraud the insurance company. The burning of the store and stock of goods was the means used to accomplish that end. At the time these admissions are claimed to have been made,

C. W. Osborne, the appellant, had not succeeded in getting a settlement with the insurance company; but the evidence shows that he was using his best efforts to do so, and these efforts continued up to April 27th, the fire having occurred on February 4th, prior. These alleged declarations of the co-conspirators, testified about by witnesses, were made some time between February 4th and April 27th. At this time the object of the conspiracy had not been accomplished. These alleged declarations were properly admitted. "Acts or declarations of conspirators are not always excluded because they were done or made after the commission of the crime. If for any reason, as for escape or concealment, the common purpose continues, declarations in furtherance thereof are admissible, although the crime which was the object of the conspiracy has been consummated." 12 Cyc. 438, i. "Where the conspiracy has for its purpose, not only the commission of a crime, but also a division of the profits, or the realization of the benefits, which are the results therefrom, as in conspiracy to commit larceny or embezzlement, the declarations by one conspirator, made after the crime, but before the subsequent arrangements are complete, are competent as against his co-conspirators." 12 Cyc. 438, j.

It is further insisted that it was error to admit evidence of the pleas of guilty of Joe Osborne and R. E. Tennery. In support of this contention, counsel for appellant contends that the pleas of guilty were to an indictment for a different crime (burning of storehouse) than the one lodged against appellant (burning of goods), and therefore it in no way showed appellant's connection with the case. There is no merit in this contention. The pleas of guilty were admissible. They showed a confession on the part of Joe Osborne and Tennery. It is true these pleas of guilty were to an indictment for burning the storehouse. The burning of the storehouse and the stock of goods was one and the same fire. Under

these facts, this evidence was just as competent as if the pleas of guilty had been to the indictment for the burning of the goods. Under the facts of this case, to hold otherwise would be a construction too strained and unreasonable, too captious and technical.

To convict this appellant, the state was compelled to show that the fire was of an incendiary origin, and that Williams, Tennery, and Joe Osborne, or one of them, were the guilty parties. It is true the state had shown this fact by Joe Williams while on the stand; but the state was not confined alone to the testimony of Williams. Bear in mind the evidence to show these pleas of guilty was not competent for the purpose of proving that the intent was to defraud the insurance company, nor was it competent to show that the appellant, Osborne, had any guilty connection whatever with Joe Osborne, R. E. Tennery, and Joe Williams in the unlawful burning. The plea of guilty was properly admitted. In our own state it was held, in the case of *Keithler* v. *State,* 10 Smedes & M. 193, that "on the trial of a prisoner, indicted as an accessory to murder, the record of the conviction of the principal is evidence to prove that conviction, and all its legal consequences, though not evidence of the fact of the guilt of the prisoner." This same question is decided in the case of *Lynes* v. *State,* 36 Miss. 617. Upon the same point we find, in 2 Wigmore on Evidence, sec. 1079: "That a confession of a principal is admissible, on the trial of the accessory, to evidence the commission of the crime by the principal, seems clear on principle, supposing some evidence of the defendant's cooperation to be first furnished. But whether the judgment of conviction of the principal is receivable for the same purpose depends on the doctrine of the effect of judgments."

It is further insisted that, under section 1026 of the Code of 1906, it was not necessary to show the conviction of Tennery and Osborne in order to convict the appel-

lant.  Section 1026 reads as follows: "Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal and shall be indicted and punished as such; and this whether the principal has been previously convicted or not." If we catch the idea of counsel, the section does not bear the interpretation put upon it by him.  It was simply intended to charge all accessories to any felony before the fact as principals.  Nevertheless, where several are indicted jointly for a felony, if the evidence shows that one or more were accessories before the fact, though charged in the indictment as principals, it is absolutely necessary to prove the party guilty who actually committed the felony before you can secure proof of the guilt of the accessories before the fact, though charged in the indictment as principals, by virtue of section 1026, Code of 1906.  It is true that under this section the accessory can be tried and punished as a principal, before or after the principal has been tried.

With great zeal counsel for appellant contends that "there was no evidence of a conspiracy, other than the declarations of the co-conspirators themselves, and that these declarations were not admissible until the state had introduced other proof sufficient to establish a conspiracy."  In the consideration of this question, it is well to keep in mind, as we have said heretofore, that before the declaration of one party can be received in evidence against another, in a criminal prosecution, there must be proof of a conspiracy *aliunde*.  "But it is quite as well settled that a conspiracy may be proved, like other controverted facts, by the acts of parties or by circumstances, as well as their agreement." *Street* v. *State*, 43 Miss. 2.

We have considered this record thoroughly, and it is manifest to us that the court did not admit any of the declarations of the co-conspirators until the conspiracy had been proven.  Taking Joe Williams' testimony, and

construing it in the light of all the facts and circumstances contained in this record, especially considering the facts and circumstances surrounding this fire and the conduct of the appellant, both before and after the fire, one is driven to the conclusion that they are absolutely inconsistent with any possible explanation, except upon the theory that he had conspired with Joe Osborne, Joe Williams, and R. E. Tennery to burn the building and stock of goods, with a view of defrauding the insurance company. There are many and various criminating circumstances in evidence in this case to point with almost absolute certainty that the attempt to defraud the insurance company was a well-planned and premeditated scheme on the part of appellant. The jury believed him guilty and doubtless they further believed that he was the master hand that inspired, directed, and planned the whole thing, and was in truth and in reality "the power behind the throne."

We think that this suggestion of error should be overruled. In the preparation of this opinion, we have been greatly aided by the able brief filed in this cause by the learned assistant attorney-general, Mr. Carl Fox.

*Overruled.*

PER CURIAM. The above opinion is adopted as the opinion of the court on the suggestion of error; and, for the reasons therein indicated, the suggestion of error is overruled.